**MILES L. KAVALLER,**
**A PROFESSIONAL LAW CORPORATION**
Miles L. Kavaller, Esq. - SBN 73950
2945 Townsgate Road, Suite 200
Westlake Village, California 91361
Tel.: 805-719-2767
Fax: 805-230-2224
E-Mail: mileskavaller@att.net
Attorney for Plaintiff, Traffix USA, Inc.

UNITED STATES DISTRICT COURT

EASTE3RN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAFFIX, USA INC., a Delaware corporation, | CASE NO. _____ |
| Plaintiff, | COMPLAINT FOR DAMAGES |
| v. | (49 U.S.C. §§14704(a)(2), 14916( c )(2) |
| JB HUNT TRANSPORT SERVICES, INC., an Arkansas corporation, JOSE G. ORTIZ, AN INDIVIDUAL doing business as GAYTAN TRUCKING, COSTCO WHOLESALE CORPORATION, a Washington state corporation, and ACE HARDWARE CORP., a Delaware corporation, | (Jury Trial Demanded) |
| Defendants. | |

## INTRODUCTION

There is an idiom that has developed in last twenty years in cases like this: "The bed rock of rule of carriage cases is that, absent malfeasance, the carrier gets paid.". *See Excel Transportation Services, Inc. vs. CSX Lines, LLC,* 280 F.2d 617, 619 (S.D. Tex. 2003).[1]

---

[1] See, "The Carrier Must Get Paid—Fact or Fiction", The Transportation Lawyer, April 2012, Vol. 13, No. 5 by attorneys Gordon Hearn, Jeffrey Simmons and Michael Tauscher available at
https://www.scopelitis.com/scopelitis/assets/dynapsis/Carrier%20Must%20Get%20PaidFact%20or%20Fiction%20Tauscher.pdf.

In this Complaint, Traffix USA, Inc. ("Traffix") seeks damages from the named defendants suffered as a result of cyber fraud enabled by the violation by Defendant JB Hunt Transport Services, Inc. ("JB Hunt") of federal statutes and regulations governing interstate motor carrier transportation and brokerage.

The FBI website identifies Internet fraud as the use of Internet services or software with Internet access to defraud victims or to otherwise take advantage of them. Internet crime schemes steal millions of dollars each year from victims and continue to plague the Internet through various methods. Several high-profile methods include Business E-Mail Compromise (BEC), a sophisticated scam targeting businesses working with foreign suppliers and companies that regularly perform wire transfer payments. The scam is carried out by compromising legitimate business e-mail accounts through social engineering or computer intrusion techniques to conduct unauthorized transfers of funds. Traffix is a victim of such activities. Here is how it worked.

## THE FRAUDULENT SCHEME

Traffix suffered money damages in excess of five hundred thousand dollars as the result of the violation of federal motor carrier transportation law and the negligence of Defendants JB Hunt and the negligence of Costco Wholesale Corp. ("Costco") and Ace Hardware Corp. ("Ace Hardware") whose conduct provided the opportunity for a fraudster to pose as M&M West Coast Produce, Inc., a legitimate Fresno based agricultural products/produce broker which required truck transport for shipments to its customers. These shipments originated in California and were delivered to Costco and Ace Hardware facilities. JB Hunt arranged to have the Costco and Ace Hardware shipments transported by Jose Ortiz, an individual doing business as Gaytan Trucking (hereinafter referred to as "Ortiz/Gaytan") who, according to the Federal Motor Carrier Safety Administration (hereinafter referred to as "FMCSA") records is based in Fresno, and operates with a single truck. JB Hunt with whom Ortiz/Gaytan had a contract, supplied him with the necessary confidential information needed to pick up and transport the Costco and Ace Hardware

and other shipments to their interstate destinations. However, Ortiz/Gayton did not provide the truck transport for these Costco and Ace Hardware shipments. Posing as M&M West Coast Produce, Ortiz/Gayton, or a co-conspirator, the true identity of whom is unknown, engaged in an e-mail based scheme whereby the information about the shipments provided by JB Hunt to Ortiz/Gaytan enabled him to act as, and receive compensation for acting as, an unlicensed truck broker providing numerous loads to Traffix. Believing the load assignments were entirely legitimate, with no reason to think otherwise, Traffix, an authorized truck broker, arranged for the transport of eighty-three (83) or so shipments by a number of the interstate trucking firms with whom it had done business. Remarkably all of the many shipments were delivered to the Costco and Ace Hardware customers without incident and Traffix paid those carriers for their services as required by their agreements

    Traffix in turn issued its invoices to M&M West Coast Produce and between February 1, 2021 and as late as June 30, 2021 Traffix received payments totaling $333,198. So far, so good; no need for concern. But unbeknownst to Traffix, Ortiz/Gaytan or an unknown co-conspirator impostor posing as M&M West Coast Produce, which had gained the trust of Traffix, was now in a position to unleash its fraudulent scheme. Ortiz/Gaytan or an unknown co-conspirator posing as M&M West Coast Produce, acting as an unlicensed truck broker, continued to send load assignments for Costco and Ace Hardware shipments to Traffix and Traffix continued to arrange for their transport and pay the trucking firms for their services until October 29, 2021. Traffix continued to send invoices to the impostor. Now, however, Ortiz/Gaytan or an unknown co-conspirator impostor posing as M&M West Coast Produce, did not make payments to Traffix after June 30, 2021. Numerous e-mails were exchanged between Traffix and Ortiz/Gaytan or an unknown co-conspirator impostor posing as M&M West Coast Produce, promising payment. None was forthcoming. In the meantime the Ortiz/Gaytan or an unknown co-conspirator impostor posing as M&M West Coast Produce, incurred freight charges, including the

compensation for the brokerage services of Traffix, totaling $523,683.00.

Apparently, neither Costco, nor Ace Hardware were aware of any problem, although they should have been. Had Costco and Ace Hardware and their consignors been more attentive, they would have and should have obtained appropriate identification of the drivers and equipment to ensure that the trucking firms that loaded and delivered these shipments were correctly identified in the field for "Carrier", "Routing Description" or similar designations on the bill of lading as Ortiz/Gaytan. Nevertheless, without confirmation of identification that Ortiz/Gaytan Trucking was providing the trucking service, Costco and Ace Hardware allowed their cargo to be loaded, transported and delivered by trucking companies whose services were arranged by Plaintiff, Traffix. Furthermore, Costco and Ace Hardware paid JB Hunt and JB Hunt paid Ortiz/Gaytan or an unknown co-conspirator posing as M&M West Coast Produce, for its purported trucking service. However, Traffix which actually did provide services as a broker, including the payment therefor to the interstate truckers, did not receive payment for its services totaling $523,683.

## COMPLAINT

Plaintiff, Traffix for its Complaint, alleges as follows.

## THE PARTIES

1. Plaintiff, Traffix is a corporation organized and existing under and by virtue of the laws of the state of Delaware, with its principal place of business in Milton, Ontario, Canada. It is therefore a citizen of Canada, a foreign country, and Delaware. Traffix is a broker of truck transportation registered with the United States Department of Transportation, Federal Motor Carrier Safety Administration ("FMCSA"). It has offices in various locations in the United States and is engaged in business in California and the Eastern District of California. Its brokerage services include arranging transport for trucking subject to the ICC Termination Act of 1994 ('ICCTA") in 49 U.S.C. §13101, et seq.[2] (hereinafter "regulated freight") as well as

---

[2] Dec. 29, 1995, P. L. 104-88, Title I, § 103, 109 Stat. 853.

arranging for truck transport which is not subject to the ICCTA, consisting of agricultural products, primarily fresh produce, otherwise referred to as, and hereinafter referred to as, either "unregulated freight" or "exempt commodities."[3]

2. Defendant JB Hunt is a corporation organized and existing under and by virtue of the laws of the state of Arkansas with its principal place of business located in Lowell, Arkansas. It is a citizen of Arkansas. It is engaged in business as an interstate motor carrier, and as applicable here, as a truck broker subject to the ICCTA, to the extent it transported regulated freight as well as the transport of exempt commodities. JB Hunt is registered with the FMCSA as both a motor carrier and as a truck broker. It is engaged in business in California, including in the Eastern District of California. Acting as an agent for Defendants Costco, Ace, and others, and acting as a broker and not a motor carrier, JB Hunt arranged for transportation by interstate motor carrier which provided services to Costco and Ace Hardware.

3. Defendant Costco Wholesale Corporation ("Costco") is a corporation organized and existing under and by virtue of the laws of the state of Washington with its principal place of business located in Issaquah, Washington. Costco is a citizen of the state of Washington. Costco is engaged in business as a retailer of consumer items with stores throughout the United States and is engaged in business in the Eastern District of California..

4. Defendant Ace Hardware Corporation ("Ace Hardware") is a corporation organized and existing under and by virtue of the laws of the state of Delaware with its principal place of business located in Oakbrook, Illinois. It is a citizen of both Delaware and Illinois. It is engaged in the retail sale of hardware items, has stores throughout the United States, and is engaged in business in the Eastern District of California.

5. Defendant Jose G. Ortiz is an individual said on the FMCSA records to be doing business under the fictitious name of Gaytan Trucking (hereinafter referred to as "Gaytan" or "Gaytan

---

[3]See 49 U.S.C. §13506(a)(6)(B).

Complaint for Damages
5

Trucking"). However, and as required by California Business and Professions Code §17900, there is, and has not been, such a filing with the Fresno County Clerk/Registrar.

Plaintiff is informed and believes and based thereon alleges that Ortiz is a citizen of the State of California residing in, and conducting business in, Fresno, California in the Eastern District of California. Gaytan Trucking is engaged in the trucking business and is registered with the FMCSA as a motor carrier. Gaytan is not however registered as a truck broker.[4] JB Hunt and Gayton entered into a broker-carrier contract at some time before May 1, 2021. Plaintiff is informed and believes and thereon alleges that Gaytan Trucking alone or with other unknown persons, represented itself to Traffix as M&M West Coast Produce.

## JURISDICTION AND VENUE

6. Except as to defendant Ace Hardware and the eighth claim against it for reimbursement of monies Traffix paid to the performing carriers, and the fourth and fifth federal statutory claims, this court has diversity jurisdiction with respect to the first, second, third, sixth and seventh claims over the parties and subject matter of this case pursuant to 28 U.S.C. §1332(a)(3) because the defendant parties are citizens of different states, Plaintiff is a citizen of a foreign state and the amount in controversy exceeds $75,000.

7. The court also has federal subject matter jurisdiction under 28 U.S.C. §1331 and 49 U.S.C. §§14704 and 14916( c ) for the fourth and fifth claims against JB Hunt and Ortiz/ Gaytan Trucking.

8. The Court is asked to exercise its supplemental jurisdiction pursuant to 28 U.S.C. §1367(a) as to the eighth claim against Ace Hardware for reimbursement of monies paid to the performing motor carriers, because it is so related to all of the other claims in the action within

---

[4]Providing a truck brokerage service without being registered with the FMCSA and maintaining a surety bond in the sum of $75,000 is a violation of 49 U.S.C. §14916(a). Under 49 U.S.C. §14916( c ) and (d), "[a]ny person who knowingly authorizes, consents to, or permits, directly or indirectly, either alone or in conjunction with any other person, a violation of subsection (a) is liable—(2) to the injured party for all valid claims incurred without regard to amount." See the First Claim, *infra*.

the court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

9. Venue is proper in this district because a substantial part of the events or omissions giving rise to the claim occurred in the Eastern District of California.

## ALLEGATIONS AGAINST ALL PARTIES.

10. Between February 1, 2021 and December 31, 2021 Traffix arranged for the transport of both shipments of regulated freight and exempt commodities more or less consisting of produce for Costco stores and hardware items for Ace Hardware stores.

11. The load assignments for these shipments originated with Costco and Ace Hardware and were provided to JB Hunt. JB Hunt in turn arranged for their motor carrier transport and brokered these shipments to Ortiz/Gaytan/M&M. The regulated commodities were to be transported under Gaytan Trucking's FMCSA motor carrier authority and subject to the ICCTA and the FMCSA regulations which applied to those shipments. The exempt commodities were also to be transported by Ortiz/Gaytan Trucking. However, FMCSA authority is not required for those shipments and accordingly the provisions of the ICCTA and the FMCSA regulations are not applicable to those shipments.

12. Traffix is informed and believes and based thereon alleges that after his receipt of load assignments from broker JB Hunt, Ortiz/Gaytan Trucking, or an unknown co-conspirator posing as M&M West Coast Produce, re-brokered (i.e. "double brokered") these Costco and Ace Hardware shipments to Traffix to arrange for, and pay for, their transport by other trucking companies while keeping the monies paid to it by JB Hunt. Traffix, having paid the performing carriers, is here seeking reimbursement therefor together with its brokerage fees, from the defendants who are jointly and severally liable therefor.

13. Between February 1, 2021 and December 31, 2021 Traffix provided its brokerage services and the motor carriers provided their transportation services and all of the Costco and

Ace Hardware shipments numbering approximately eighty-three (83), were delivered to the consignees without incident.

14. Traffix issued its invoices to M&M West Coast Produce which did not pay them. The total amount owed to Traffix is $523,683.

### FIRST CLAIM AGAINST ORTIZ/GAYTAN

**(Breach of Contract)**

15. Plaintiff incorporates the allegations is paragraphs 1 through 14 as though fully set forth and repeated herein and further alleges as follows.

16. Traffix entered into written contracts for its brokerage services with Ortiz/Gaytan/M&M as memorialized in e-mail exchanges and/or load assignments

17. Ortiz/Gayton/M&M breached those contracts by failing to pay Traffix for its services.

18. Traffix satisfied all of the terms, conditions and requirements of those contracts or was otherwise excused therefrom

19. As the proximate result of the breach of these contracts, Traffix has been damaged in the sum of $523,683 together with prejudgment interest thereon.

### SECOND CLAIM AGAINST JB HUNT

**(Breach of Implied-In-Fact Contract)**

20. Plaintiff incorporates the allegations is paragraphs 1 through 14 as though fully set forth and repeated herein and further alleges as follows.

21. There was a contract implied-in-fact between defendant JB Hunt and Traffix as well as between JB Hunt and the trucking companies Traffix hired to transport the Costco and Ace Hardware shipments. Although JB Hunt purportedly brokered the Costco and Ace Hardware shipments to defendant Gaytan Trucking, Gaytan Trucking did not transport those shipments. Those shipments were in fact transported by motor carriers whose services were arranged by, and paid for by, Traffix.

22. Plaintiff Traffix is informed and believes and based thereon alleges that Defendant JB Hunt contracted with Costco and Ace Hardware to obtain motor carrier transport of their shipments and to receive payments for it brokerage services and to compensate the performing trucking companies for their services.

23. Defendant JB Hunt did not pay either Traffix or the performing carriers for their trucking services.

24. Plaintiff, Traffix paid the performing carriers for their trucking services and, having made unsuccessful demand for reimbursement, is entitled to be reimbursed therefor by JB Hunt, together with its brokerage fees,.in an amount totaling $523,683.

## THIRD CLAIM AGAINST JB HUNT

**(Negligence in its Broker Activities with Respect to Exempt Commodities)**

25. Plaintiff incorporates the allegations is paragraphs 1 through 14 as though fully set forth and repeated herein and further alleges as follows.

26. Acting as an agent for defendants Costco and Ace Hardware to whom it owed a fiduciary duty to provide diligent and faithful service, and as a truck broker for the interstate motor carrier transport of either their regulated or exempt commodities, JB Hunt had a legal duty to foreseeable plaintiffs including Traffix, to exercise due care in the selection of motor carriers to whom it brokered shipments for interstate motor carrier transportation and to otherwise observe the custom and practice of the truck brokerage business, which at a minimum, includes the following:

(1) tendering shipments to a qualified motor carrier which is registered with the FMCSA for the transport of regulated freight, has a satisfactory safety rating with the FMCSA and property and cargo damage insurance and has sufficient equipment and manpower to handle to volume of traffic it agreed to transport;

(2) monitoring the progress of the shipment to ensure that the motor carrier selected by a

truck broker identified in the bill of lading in the field therefor, whether described as "Carrier", "Routing Description" or otherwise, takes possession of the cargo at the origin identified on the bill of lading and delivers the shipment to the consignee at the destination designated on the bill of lading, and to note the condition of the cargo on the bill of lading upon arrival and delivery to the consignee;

(3) receiving periodic updates on the status of shipments to advise JB Hunt of information such as, but not limited to: the carrier's arrival for loading and unloading at each stop; confirmation of completion of loading and unloading at each stop; any overage, shortage or damage information relating to cargo; notice of the location where any trailer is spotted, if JB Hunt or customer equipment is used; periodic check calls, and accident reporting;

(4) identifying the performing carrier to the parties to the bill of lading identified as the consignors, consignees or a third party to whom the carrier freight bill invoice is to be sent, those being the parties ultimately responsible for payment for the motor carrier services provided; and

(5) taking appropriate measures to prevent double brokering of shipments by the motor carrier to whom the shipment was brokered.

27. JB Hunt breached its legal duty, as described in paragraph 26 above, as follows:

(1) by tendering shipments to a Defendant Ortiz/Gaytan which according to FMCSA records operated a single truck and was not a qualified motor carrier which had sufficient equipment and manpower to transport the volume of traffic that JB Hunt brokered to it;

(2) by failing to receive periodic updates from Ortiz/Gaytan on the status of shipments to advise it of information such as, but not limited to: the carrier's arrival for loading and unloading at each stop; confirmation of completion of loading and unloading at each stop; any overage, shortage or damage information relating to cargo; notice of the location where any trailer is spotted, if JB Hunt or customer equipment is used; periodic check calls, and accident reporting;

(3) by failing to identify Ortiz/Gaytan as the performing carrier on the bill of lading, or

otherwise instructing the consignors to do so, and informing the parties to the bill of lading identified as the consignors, consignees or a third party to whom the carrier freight bill invoice is to be sent, those being the parties ultimately responsible for payment for the motor carrier services provided; and

(4) by failing to ensure that Ortiz/Gayton did not double broker the loads JB Hunt brokered to it.

28.   As a broker of interstate motor carrier transportation, JB Hunt also had a duty to ensure that the motor carriers it selected to perform the transportation successfully delivered the cargo to the consignee and obtained proof thereof typically by a notation on the bill of lading. Receipt thereof is a condition of payment of the motor carrier's freight charges. Plaintiff is informed and believes and thereon alleges that JB Hunt received proofs of delivery for the Costco and Ace Hardware shipments from the motor carriers arranged by Traffix who sent them to the impostor, Ortiz/Gaytan who posed as M&M West Coast Produce or an unidentified co-conspirator posing as M&M West Coast Produce. Plaintiff is further informed and believes and thereon alleges that JB Hunt in turn paid Ortiz/Gaytan posing as M&M West Coast Produce or an unidentified co-conspirator posing as M&M West Coast Produce. When informed of the fraud by Traffix, JB Hunt acknowledged that Traffix and its retained carriers were not the only victims of the fraud perpetrated by Ortiz/Gaytan who posed as M&M West Coast Produce or an unidentified co-conspirator posing as M&M West Coast Produce. Although JB Hunt initially pledged to work with Traffix, JB Hunt ceased to cooperate with Traffix and has since claimed it did not breach its duty to its customers or to the performing carriers to ensure that properly licensed, authorized and insured carriers are retained and that payment of freight charges are made to the performing carriers.

29.   Many of the bills of lading prepared by the consignors of the involved shipments identified JB Hunt in the field for "Carrier" or "Route Description", or similar designation. JB

Hunt was negligent in failing to ensure that rather than its name, the bills of lading prepared by the consignors identify the performing carrier in the field for "Carrier", or "Route Description" or otherwise, on the bill of lading in order to avoid confusion about the identity of the motor carrier transporting the cargo, not only for the parties to the bill of lading, but also for the local or state authorities whose job it is to inspect trucks and cargo entering into and traversing their states to enforce federal and state safety laws.

30.     As the proximate result of JB Hunt's negligent actions and/or omissions, Ortiz/Gayton was able to pose as M&M West Coast Produce or otherwise enabled an unidentified co-conspirator to pose as M&M West Coast Produce, to defraud Traffix which suffered damages in the sum of $523,683.

**FOURTH CLAIM AGAINST JB HUNT**

**(Liability for Violations of 49 U.S.C. §14916**

**in the Brokerage of Motor Carrier Transport of Regulated Commodities)**

31.     Plaintiff incorporates the allegations is paragraphs 1 through 14 as though fully set forth and repeated herein and further alleges as follows.

32.     As here pertinent, 49 U.S.C. § 14916. (Unlawful brokerage activities) provides as
   follows:

   "(a) Prohibited activities. A person may provide interstate brokerage services as a broker
   only if that person—

   (1) is registered under, and in compliance with, section 13904 [49 USCS § 13904]; and

   (2) has satisfied the financial security requirements under section 13906 [49 USCS §
   13906].

   ****************************************

   © Civil penalties and private cause of action. Any person who knowingly authorizes,
   consents to, or permits, directly or indirectly, either alone or in conjunction with any other

Complaint for Damages
12

person, a violation of subsection (a) is liable—

(1) to the United States Government for a civil penalty in an amount not to exceed $10,000 for each violation; and

(2) to the injured party for all valid claims incurred without regard to amount.

(d) Liable parties. The liability for civil penalties and for claims under this section for unauthorized brokering shall apply, jointly and severally—

(1) to any corporate entity or partnership involved; and

(2) to the individual officers, directors, and principals of such entities."

33. Defendant JB Hunt knowingly authorized, consented to, or permitted Ortiz/Gaytan Trucking to operate as a broker for the motor carrier transport of regulated commodities without having satisfied the registration and bonding requirements in 49 U.S.C. §14916(a)(1) and (2) directly or indirectly, and thereby violated 49 U.S.C. §14916(a) and is liable to Plaintiff Traffix, the injured party, for the claims asserted herein, including the damages alleged in the sum of $523,683.

**FIFTH CLAIM AGAINST JB HUNT**

**(Under 49 U.S.C. §14704(a) for Violations of 49 C.F.R. §371.7 and 49 C.F.R. §371.10 in the Brokerage of Motor Carrier Transport of Regulated Commodities)**

34. Plaintiff incorporates the allegations is paragraphs 1 through 14 as though fully set forth and repeated herein and further alleges as follows.

35. As here pertinent, 49 U.S.C. §14704. (Rights and remedies of persons injured by carriers or brokers) provides as follows:

"(a) In general.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

(2) Damages for violations. A carrier or broker providing transportation or service subject to jurisdiction under chapter 135 [49 USCS §§ 13501 et seq.] is liable for damages

sustained by a person as a result of an act or omission of that carrier or broker in violation of this part [49 USCS §§ 13101 et seq.].

(e) Attorney's fees. The district court shall award a reasonable attorney's fee under this section. The district court shall tax and collect that fee as part of the costs of the action."

36. As here pertinent, 49 C.F.R. § 371.7 (Misrepresentation.) provides as follows:

"(a) A broker shall not perform or offer to perform any brokerage service (including advertising), in any name other than that in which its registration is issued.

(b) A broker shall not, directly or indirectly, represent its operations to be that of a carrier. Any advertising shall show the broker status of the operation."

37. Defendant JB Hunt was identified most of bills of lading as the motor carrier in the field therefor, despite the fact that it did not transport the loads and brokered them to Defendant Ortiz/Gaytan Trucking, in violation of 49 C.F.R. §371.7(b).

38. 49 C.F.R.§ 371.10 (Duties and obligations of brokers.) provides as follows:

"Where the broker acts on behalf of a person bound by law or the FMCSA regulation as to the transmittal of bills or payments, the broker must also abide by the law or regulations which apply to that person."

39. The shippers, whether consignor or consignee, here Costco and Ace Hardware, are ultimately responsible for the payment of freight charges to the motor carrier that performed the service even if they have already paid a broker, here JB Hunt, therefor, where the broker failed to pay the performing motor carrier. See for example, *Oak Harbor Freight Lines, Inc. v. Sears Roebuck & Co.,* 513 F.3d 949 (9th Cir. 2008).

40. When informed of the fraud by Traffix, JB Hunt acknowledged that Traffix and its retained carriers were not the only victims of the fraud perpetrated by Ortiz/Gaytan who posed as M&M West Coast Produce or an unidentified co-conspirator posing as M&M West Coast Produce. Although JB Hunt, when first informed of the fraud it enabled, pledged to work with

Traffix, JB Hunt ceased to cooperate with Traffix and has since claimed it has not breached its duty to its customers or to the performing carriers to ensure that properly licensed, authorized and insured carriers are retained and transported the cargo and that payment of freight charges were made to the performing carriers. Defendant JB Hunt, acting as the agent of Costco and Ace Hardware, therefore failed to act on behalf of those customers, bound by law as herein alleged, to transmit payment to Traffix in violation of 49 C.F.R. §371.10.

41. Defendant JB Hunt therefore acted as a broker providing transportation or service subject to jurisdiction under chapter 135 [49 USCS §§ 13501 et seq.] and is liable for damages sustained by Plaintiff, Traffix as a result of its acts or omissions as a broker and violated the regulation in 49 C.F.R. §371.10. adopted in accordance with 49 USCS §§ 13101 et seq., in the sum of $523,683.

42. Plaintiff seeks an award of attorney's fees in an amount according to proof pursuant to 49 U.S.C. §14704(e) in post judgment proceedings.

### SIXTH CLAIM AGAINST JB HUNT

### (Breach of Fiduciary Duty Owed to Traffix)

43. Plaintiff incorporates the allegations is paragraphs 1 through 14 and 26 through 41 as though fully set forth and repeated herein and further alleges as follows.

44. The payments made by Costco and Ace Hardware to JB Hunt consisted of payment for the performing carriers as well as the brokerage fees of JB Hunt. The portion of the payments to be made to the performing motor carriers were to be segregated and held in trust for their benefit and paid to them after the completion of the transportation of the Costco and Ace Hardware loads.

45. Defendant JB Hunt breached its fiduciary obligation owed to the performing motor carriers by paying defendant Gaytan Trucking and not paying them.

46. When informed of the fraud by Traffix, JB Hunt acknowledged that Traffix and its

retained carriers were not the only victims of the fraud perpetrated by Ortiz/Gaytan who posed as M&M West Coast Produce or an unidentified co-conspirator posing as M&M West Coast Produce. Although JB Hunt initially pledged to work with Traffix, JB Hunt ceased to cooperate with Traffix and has since claimed it did not breach its duty to its customers or to the performing carriers to ensure that properly licensed, authorized and insured carriers are retained and that payment of freight charges are made to the performing carriers.

47.   Plaintiff Traffix paid the performing carriers and together with its brokerage fees is entitled to reimbursement of $523,683.

### SEVENTH CLAIM AGAINST COSTCO

**(Reimbursement by Costco of Payments to Motor Carriers Made By Traffix)**

48.   Plaintiff incorporates the allegations is paragraphs1 through 14 as though fully set forth and repeated herein and further alleges as follows.

49.   Costco and Ace Hardware were the consignors or consignees of the shipments transported by the motor carriers whose services were arranged by Traffix.

50.   As a party to the bills of lading transportation contracts Costco was obligated to pay the freight charges of the motor carriers who transported those shipments, even if they had already paid broker, JB Hunt. See for example, *Oak Harbor Freight Lines, Inc. v. Sears Roebuck & Co.*, 513 F.3d 949 (9th Cir. 2008).

51.   Traffix paid those motor carriers who transported Costco's shipments the sum of $337,587 and is entitled to be reimbursed therefor, together with its lost profits in an amount to be proved at trial.

### EIGHTH CLAIM AGAINST ACE HARDWARE

**(Reimbursement by Ace Hardware of Payments to Motor Carriers Made By Traffix)**

52.   Plaintiff incorporates the allegations is paragraphs 1 through 14 as though fully set forth and repeated herein and further alleges as follows.

52. Traffix paid those motor carriers who transported Ace Hardware's shipments the sum of $33,070.00 and is entitled to be reimbursed therefor together with its lost profit in an amount that will be proved at trial.

53. As a party to the bills of lading transportation contracts Ace Hardware was obligated to pay the freight charges of the motor carriers who transported those shipments, even if they had already paid broker, JB Hunt. See for example, *Oak Harbor Freight Lines, Inc. v. Sears Roebuck & Co.*, 513 F.3d 949 (9th Cir. 2008).

WHEREFORE, Plaintiff prays that judgment be entered in it favor and against Defendants Jose G. Ortiz dba Gaytan Trucking, JB Hunt Transport Services, Inc., Costco Wholesale Corp. and Ace Hardware, Inc. in an amount according to proof, prejudgment interest thereon, attorney's fees, and such other and further relief as the Court deems just.

Dated: February 11, 2022

        MILES L. KAVALLER
        A PROFESSIONAL LAW CORP.

By: _____
        Miles L. Kavaller, Esq.
        Attorney for Plaintiff, Traffix USA, Inc.

**JURY DEMAND**

Plaintiff demands a jury on all issues triable by a jury.

Dated: February 11, 2022

        MILES L. KAVALLER,
        A PROFESSIONAL LAW CORP.

By: _____
        Miles L. Kavaller, Esq.
        Attorney for Plaintiff, Traffix USA, Inc.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28